IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy F. Albe,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | No. CV 12-0457-PHX-JAT (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES DISTRICT JUDGE:

    This matter comes before this Court upon consideration of a *pro se* Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody, filed on March 5, 2012, by Petitioner Timothy F. Albe, who is confined in the Arizona State Prison. (Doc. 1.) Respondents filed their Answer on May 30, 2012. (Doc. 7.) Petitioner has not filed a Reply.

**BACKGROUND**

    Petitioner was indicted on May 5, 2003, by a State of Arizona Maricopa County Grand Jury on four felony counts: First Degree Murder, a dangerous offense (Count 1); Armed Robbery, a dangerous offense (Count 2); Burglary in the First Degree, a dangerous offense (Count 3); and Misconduct Involving Weapons (Count 4). (Doc. 7, Exh. A.) The State then filed a sentencing enhancement allegation that Petitioner had a prior conviction for Aggravated Assault, and that Petitioner was on release from confinement for that offense at the time the offenses alleged in the Indictment were committed. (Id., Exhs. B-C.) The State

1 also filed an allegation of eight aggravating circumstances (other than prior convictions).
2 (Id., Exh. H.)

3 Petitioner proceeded to trial on August 23, 2005, and after 14 days of trial, the jury
4 was unable to reach a verdict and a mistrial was declared. (Doc. 7, Exh. K.) Petitioner's
5 second jury trial also ended in a mistrial due to the fact that the prosecutor became seriously
6 ill. (Id., Exh. M.) Before commencement of the third trial, Petitioner and the State reached
7 a plea agreement. (Id., Exh. O.) The agreement provided that Petitioner would plead guilty
8 to Amended Count 1, Second Degree Murder, as a dangerous offense, and Amended Count
9 2, Armed Robbery. (Id.) The parties stipulated that there were no agreements regarding
10 sentencing, except that Petitioner's prison term would not exceed 25 years. (Id. ¶2.) The
11 State agreed to dismiss the remaining charges, dismiss the allegation of priors, and not file
12 any further charges out of a referenced Phoenix Police Department report. (Id. ¶3.)

13 On Amended Count 1, Second Degree Murder, as set forth in the plea agreement,
14 Petitioner faced a minimum 10-year sentence, a presumptive 16-year sentence, and a
15 maximum 22-year sentence. (Doc. 7, Exh. O, ¶1.) On Amended Count 2, Armed Robbery,
16 Petitioner faced a minimum 4-year sentence (3-years if the court found exceptional
17 circumstances), a presumptive 5-year sentence, and a maximum 10-year sentence (12-years
18 if the court found exceptional circumstances). (Id.) The plea agreement further provided that
19 probation was available on Count 2, but not on Count 1. (Id.)

20 In the final page of the plea agreement, titled the "plea agreement addendum,"
21 Petitioner consented to "judicial fact finding by preponderance of the evidence as to any
22 aspect or enhancement of sentence," and that "[i]n making the sentencing determination, the
23 court is not bound by the rules of evidence." (Doc. 7, Exh. O, at 3.) Petitioner initialed all
24 of the paragraphs of the plea agreement and signed at the end, indicating that he had
25 "personally and voluntarily placed [his] initials in each of the above boxes and signed the
26 signature line below to indicate [he] had read and approved all of the previous paragraphs
27 in this agreement." (Id.)

28

1	Prior to entering his guilty pleas before the court, a Settlement Conference was held, 2 during which time the court explained to Petitioner the range of sentence that could be 3 imposed should Petitioner be convicted at trial on the charges in the Indictment. (Doc. 7, 4 Exh. P.) A transcript of this session and the subsequent change-of-plea proceeding does not 5 exist, as the court reporter could not find her notes from which to transcribe this proceeding. 6 (Doc. 7, at 5, n. 3.)

7	Petitioner's sentencing hearing took place on May 2, 2006. (Doc. 7, Exh. SS, R.T. 8 05/02/06, internally attached as Exhibit C.) During the hearing, the State recommended the 9 presumptive sentence, "in accordance with the record made at the change of plea 10 proceedings." (Id., Exh. SS, R.T. 05/02/06, at 24.)   After hearing from the deceased 11 victim's family as well as from persons appearing on behalf of Petitioner, the court weighed 12 the aggravating and mitigating factors and sentenced Petitioner to an aggravated term of 19-13 years' imprisonment on Amended Count 1, and 7-years probation on Amended Count 2, and 14 ordered that the probation term be served consecutively to the prison sentence. (Id., Exhs. 15 U-V; Exh. SS, R.T. 05/02/06, at 27-30.) The court found as aggravating factors Petitioner's 16 "extensive criminal history not only in juvenile court but in the adult court, including a prior 17 crime of violence, a felony of violence," the fact that Petitioner had "acted with 18 accomplices," and the trauma that the victims had experienced both emotionally and 19 physically. (Id., Exh. SS, R.T. 05/02/06, at 28.) The court also found as mitigating 20 Petitioner's remorse, that Petitioner's capacity was somewhat diminished as he was under 21 the influence of drugs, and the family support for Petitioner, but found that the aggravating 22 factors substantially outweighed the mitigating factors. (Id., Exh. SS, R.T. 05/02/06, at 29.)

23	Four days later, a different trial judge revoked Petitioner's probation in the aggravated 24 assault case that was separately pending, and sentenced Petitioner to 2.5 years' 25 imprisonment. (Doc. 7, Exh. W, internally attached as Attachment Two.) The State 26 subsequently filed a Motion to Correct Sentence in the Second Degree Murder/Armed 27 Robbery case, arguing that Petitioner's presentence incarceration credit should be reduced 28 by the time he was in custody pursuant to the aggravated assault case, and also argued that

1  the sentences in the two cases should be ordered to be served consecutively. (Id., Exh. W.)
2  After a hearing on the motion on May 23, 2006, the court granted the State's request to
3  reduce Petitioner's presentence credit, but denied its request that the court order the sentences
4  to be served consecutively, explaining that concurrent sentences are "just under the
5  circumstances," and were "justified by the circumstances of the [Petitioner]'s conduct in this
6  case, the state's recommendation that a 16 year sentence be imposed, and the extensive
7  discussions on sentencing between the parties and the victim at the Settlement Conference."
8  (Id., Exhs. Y, Z.)

9        On June 19, 2006, Petitioner's trial counsel filed a notice of post-conviction relief
10 (hereinafter "PCR."). (Doc. 7, Exh. BB.) The court appointed different counsel to represent
11 Petition in the PCR proceeding, set a briefing schedule and ordered the court reporters to
12 prepare transcripts for the change-of-plea proceeding and the sentencing hearing. (Id., Exh.
13 CC.) Subsequently Petitioner's PCR counsel filed a request to compel the production of the
14 change-of-plea transcript. (Id., Exh. EE.) On March 2, 2007, the trial court issued an order
15 indicating that "[a]fter diligent search, the Court Reporter Administrator has informed the
16 Court that the court reporter's notes are irretrievably lost and no transcript can be produced."
17 (Id., Exh. FF.) The court suspended the PCR briefing schedule and ordered the parties to
18 follow the procedure under Arizona law by directing defense counsel to file a "statement of
19 the proceedings," followed by any objections and amendments by the State. (Id.)

20       Thereafter, Petitioner's PCR counsel submitted the following statement of the
21 proceedings:

> [I]t is appellant's position that a plea agreement was entered to the crimes of second degree murder and armed robbery as set forth under the express terms of the written plea agreement, with the exception that it was understood and agreed that the prosecutor would recommend no more than 16 years (the presumptive sentence) as to the crime of second degree murder. According to [trial] defense counsel, the court followed the standard plea colloquy to insure that Petitioner's pleas were knowingly, intelligently and voluntarily made, that a factual basis was provided to support each plea of guilty, and that all other aspects of the proceeding complied with Rule 17, Ariz.R.Crim.P.

(Doc. 7, Exh. JJ at 1-2.)

1  The trial court ultimately approved "the statement of proceedings in defense counsel's
2  motion." (Id., Exh. CCC.)

3  After Petitioner's PCR counsel filed a Notice of Completion, therein advising the
4  court that she had reviewed the record and found no colorable claims to raise on Petitioner's
5  behalf, the trial court granted Petitioner an extension of time to file a *pro se* PCR petition.
6  (Doc. 7, Exhs. LL-MM.) In his *pro se* petition, Petitioner raised the following three claims:
7  (1) that the plea agreement provided that Petitioner be sentenced to the presumptive, 16-year
8  term on Amended Count 1; (2) that the trial court's aggravation of his sentence based upon
9  Petitioner's criminal history violated his Sixth Amendment rights pursuant to Blakely v.
10 Washington, 542 U.S. 296 (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000); and
11 (3) that his sentence of 19-years' imprisonment followed by 7-years probation amounted to
12 a sum of 26 years, which was in violation of the plea agreement's cap of a 25-year prison
13 sentence. (Id., Exh. OO.) The State filed a Response, and Petitioner filed a Reply. (Id.,
14 Exhs. SS, BBB.)

15 On June 3, 2008, the trial court denied relief, ruling as follows:

> First, the defendant claims that "both sides" agreed that the defendant would be sentenced to the presumptive term of 16 years on count one and 5 years on count two. The plea agreement in this case accurately indicated the sentencing ranges for each count in paragraph one of the plea agreement. However, the stipulation in paragraph two states: "There are no agreements except that the prison term shall not exceed 25 years." Therefore, the defendant agreed that the sentence could be up to 25 years. Because the defendant received a prison sentence of 19 years, within the stipulated term, the defendant's claim must fail.
>
> Additionally, the defendant argues that his sentence was improperly aggravated beyond the presumptive term. The defendant agreed he could be sentenced to a term of 25 years. In addition, the addendum to the plea agreement explained that by entering the plea agreement, he consented to a judicial fact finding by a preponderance of the evidence as to any aspect or enhancement of sentence. Further that the Court was not bound by the rules of evidence in determining aggravating factors. The trial court stated the aggravating circumstances prior to sentencing. (State's Exhibit C, R.T. 5/2/06 at p. 28). The Court also considered mitigating factors. Finally, the Court found that the aggravating factors substantially outweighed the mitigating factors prior to imposing an aggravated term. The plea agreement precludes any objection to the sentence imposed that is consistent with the plea agreement. Therefore, this claim also fails.

> Lastly, the defendant argues that the suspension of sentence and placement on probation for a period of 7 years as to count two was a violation of his plea agreement. First, defendant mistakenly argues that the seven years was a consecutive "sentence" to the sentence imposed on count one and therefore beyond the maximum allowable sentence of 25 years. Probation is the suspension of sentence, not a sentence itself. Paragraph one of the plea agreement clearly advised the defendant that probation was an available option for the Court as to count two. In order to be supervised, the probation term was ordered to begin upon the defendant's absolute discharge from prison on count one. Therefore, the "sentence" imposed was not in violation of the plea agreement. Nothing in the plea agreement requires a prison sentence on count two, not does the agreement require that the sentence on count two be concurrent with the sentence in count one. If the defendant performs well on probation, no additional prison sentence will be imposed. On this argument, defendant's claim also fails.
>
> The Court finds that none of defendant's claims present a material issue of fact or law which would entitle the defendant to relief under this rule and no purpose would be served by any further proceedings.

(Id., Exh. DDD.)

Petitioner filed a *pro se* Petition for Review in the Arizona Court of Appeals, seeking review of the trial court's dismissal of his PCR petition. (Doc. 7, Exh. EEE.) The Arizona Court summarily denied review, and Petitioner then sought review in the Arizona Supreme Court. (Id., Exhs. GGG, III.) On March 17, 2011, The Arizona Supreme Court also summarily denied review. (Id., Exh. JJJ.)

On March 5, 2012, Petitioner filed his *pro se* federal habeas petition, raising three claims: first, he claims that the State violated the terms of the plea agreement by recommending a presumptive sentence of 16-years' imprisonment and 5-years probation, when Petitioner received 19-years's imprisonment and 7-years probation; second, he claims that the trial court's sentence of an aggravated sentence violated the terms of the plea agreement; and third, that the trial court did no allow him his constitutional right to withdraw from the plea agreement. (Doc. 1, at 6.) Respondents respond to Petitioner's claims on their merits. (Doc. 7.)

**DISCUSSION**

**1.      AEDPA Standard of Review.**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), a federal court "shall not" grant habeas relief with respect to "any claim that was

- 6 -

1 adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). The summary denial of Petitioner's petition for review by the Arizona Court of Appeals renders the trial court's decision on Petitioner's petition for post-conviction relief the "last reasoned decision" of the state court, subject to this Court's review. See Y1st v. Nunnemaker, 501 U.S. 797, 803-04 (1991)("later unexplained orders upholding [a] judgment [rejecting a federal claim]" raises a presumption that the reviewing court "looks through" the summary order to the last reasoned decision).

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 405-06. "A state court's decision can involve an 'unreasonable application' of Federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

Finally, the court may not grant habeas relief upon the finding of error, unless the error had a "substantial and injurious" effect on the fact finder's decision. Brecht v. Abrahamson, 507 U.S. 619, 631, 638 (1993).

///

**2.      Analysis of Petitioner's Claims.**

The gravamen of Petitioner's complaints is that the sentence he received, and the trial court's consideration of his criminal history as an aggravating factor, were in violation of the terms of his plea agreement. The seminal Supreme Court case on the subject of the binding nature of plea agreements is <u>Santobello v. New York</u>, 404 U.S. 257 (1971). Therein, the Court held that "a constant factor" in a trial court's acceptance of a plea bargain and the court's resulting sentence "is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262.

In evaluating a state court's interpretation of a plea agreement, the Supreme Court has held that it would uphold the state court's decision, so long as the state-court interpretation was reasonable:

> We will not second-guess the Arizona Supreme Court's construction of the language of the plea agreement. [] [T]he construction of the plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law, and we will not disturb the Arizona Supreme Court's reasonable disposition of those issues.

<u>Ricketts v. Adamson</u>, 483 U.S. 1, 7 n.3 (1987); <u>see</u> <u>also</u> <u>Haynes v. Cupp</u>, 827 F.2d 435, 438 (9th Cir. 1987) ("In establishing the terms of the agreement, we defer to the findings of the Oregon courts. [] Their construction of the agreement must remain undisturbed unless it exceeds broad bounds of reasonableness.") (citing <u>Ricketts</u>).

The trial court found that the plea agreement provisions did not support Petitioner's claim that there was an agreement that he would be sentenced to the presumptive, 16-year term of imprisonment. A plain reading of the plea agreement supports this view. The stipulation in paragraph two reads that "[t]here are no agreements except that the prison term shall not exceed 25 years." (Doc. 7, Exh. O, ¶2.) This interpretation is further supported by the fact that when the prosecutor recommended the presumptive sentence during Petitioner's sentencing hearing, no objection was made by Petitioner. Furthermore, there was extended discussion during the sentencing hearing, by the parties and those who spoke on behalf of the victim, concerning the range of sentence available to the court, (<u>Id.</u>, Exh. SS, R.T. 05/02/06,

at 5-27), and again, no objection was made when one might be expected if Petitioner truly believed that there was a stipulation that he would be sentenced to the presumptive, 16-years in prison. The trial court's decision, that Petitioner's 19-year sentence was not in violation of Petitioner's plea agreement, was not an unreasonable interpretation of the facts, or contrary to or an unreasonable application of clearly established Supreme Court law.

The trial court also found that the plea agreement provisions did not prevent the court from imposing an aggravated sentence, that Petitioner had consented to judicial fact finding by a preponderance of the evidence as to any aspect or enhancement of sentence, and that Petitioner had agreed that the court was not bound by the rules of evidence in determining aggravating factors. All of these provisions are set forth clearly on page three of the plea agreement. A defendant may waive his right to jury fact-finding of aggravating factors. "When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." Blakely, 542 U.S. at 310.

Even if Petitioner had not consented to judicial factfinding, a prior conviction may be used to aggravate a sentence without a jury determination. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable." Apprendi, 530 U.S. at 489; see also, U.S. v. Delaney, 427 F.3d 1224, 1226 (9th Cir. 2005) ("The Supreme Court has made clear that the fact of a prior conviction need not be proved to a jury beyond a reasonable doubt or admitted by the defendant to satisfy the Sixth Amendment.") The record before the trial court was clear that Petitioner had a prior felony conviction for aggravated assault. Thus the trial court's determination that the imposition of an aggravated sentence was not in violation of Petitioner's plea agreement was not an unreasonable interpretation of the facts, or contrary to or an unreasonable application of clearly established Supreme Court law.

In Petitioner's habeas petition he argues that the trial court did not allow him his constitutional right to withdraw from the plea agreement. Although he did not raise this claim in the trial court and thus has procedurally defaulted this claim, it is nonetheless

1 without merit. First, the record does not reflect that Petitioner asked to withdraw from his
2 plea agreement. Second, the plea agreement provided if the court rejected a sentencing
3 stipulation it must give Petitioner the opportunity to withdraw from the agreement:

> [A]ny sentence either stipulated to or recommended herein in paragraph two is not binding on the court. If after accepting this plea the court concludes that any of the plea agreement's provisions regarding the sentence or the terms and conditions of probation are inappropriate, it can reject the plea. If the court decides to reject the plea agreement provisions regarding sentencing it must give both the state and the defendant an opportunity to withdraw from the plea agreement.

(Doc. 7, Exh. O at 7.)

Since Petitioner was sentenced consistent with the sentencing stipulation in his plea agreement, the trial court was not required to give Petitioner that option. Also, any claim of a denial of a right to withdraw from a plea agreement is not cognizable on federal habeas review because it involves an alleged violation of state law. See Langford v. Day, 110 F.3d 1380, 1388-89 (9th Cir. 1996) (denying the federal habeas petitioner's argument "that he was denied due process because the state trial court applied the wrong legal standard when it decided his motion to withdraw his guilty pleas" because"[w]e accept a state court's interpretation of state law, and alleged errors in the application of state law are not cognizable in federal habeas corpus"); accord, Stinson v. Turner, 473 F.2d 913, 917 (10th Cir. 1973) ("We doubt that the charge [that the court unconstitutionally refused to permit defendant to withdraw his plea of guilty] amounts to a federal constitutional claim cognizable in this habeas suit."); see also, State v. Wilson, 131 Ariz. 96 (1981) (analyzing trial court's decision to deny defendant's request to withdraw from plea agreement on state law grounds).

## CONCLUSION

The state court's decision on the issues raised by Petitioner in his habeas petition were not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Thus, the Court will recommend dismissal of the petition.

- 10 -

**IT IS THEREFORE RECOMMENDED:**

That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc.1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 26th day of November, 2012.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge